**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **THE SLOVAK REPUBLIC,** | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| **v.** | § | **Civil Action No. 3:25-CV-1736-L** |
| | § | |
| **DISCOVERY GLOBAL LLC,** | § | |
| | § | |
| Respondent. | § | |

**MEMORANDUM OPINION AND ORDER**

Petitioner, the Slovak Republic ("Petitioner" or the "Slovak Republic"), seeks to confirm and enforce an arbitration award entered by an international tribunal against Discovery Global LLC ("Discovery"). *See generally* Pet. (Doc. 1). After the Slovak Republic effected service, Discovery failed to enter an appearance, and the Slovak Republic moved for entry of default and default judgment. *See* Pet.'s Mot. Default J. (Doc. 15) ("Motion"). Discovery has not entered an appearance or otherwise opposed the Motion. After careful consideration of the Motion, pleadings, record, and applicable law, the court **grants** the Motion (Doc. 15) and **issues** judgment in favor of the Slovak Republic.

## I. Background

### A. The ICSID Convention

The International Convention on the Settlement of Investment Disputes between States and Nationals of Other States (the "ICSID Convention" or "Convention"), Mar. 18, 1965, 17 U.S.T. 1270, 575 U.N.T.S. 159, is a "multilateral treaty aimed at encouraging and facilitating private foreign investment in developing countries." *Mobil Cerro Negro, Ltd. v. Bolivarian Republic of Venez.*, 863 F.3d 96, 100 (2d Cir. 2017) (citing Anthony R. Parra, *The History of ICSID* 11-12, 24-

26 (Oxford 2012)). The Convention established the International Centre for Settlement of Investment Disputes ("ICSID") to administer arbitration proceedings between a contracting state and a national of another contracting state, including the arbitral proceeding here. Convention arts. 1-3, 25; *see* Pet. (Doc. 1).

ICSID is not empowered to enforce its awards. Instead, contracting states are required to "recognize an award . . . as binding and enforce the pecuniary obligations imposed by that award within its territories as if it were a final judgment of a court in that State." Convention art. 54. Both the Slovak Republic and the United States are contracting parties to the ICSID Convention. *See* ICSID, List of Contracting States and Other Signatories of the Convention (Doc. 1-4).

Congress has passed implementing legislation to give effect to the Convention's requirement that contracting states recognize and enforce ICSID awards. Section 22 U.S.C. § 1650a(a) provides:

> An award of an arbitral tribunal rendered pursuant to [the ICSID Convention] shall create a right arising under a treaty of the United States. The pecuniary obligations imposed by such an award shall be enforced and shall be given the same full faith and credit as if the award were a final judgment of a court of general jurisdiction of one of the several States. The Federal Arbitration Act (9 U.S.C. 1 et seq.) shall not apply to enforcement of awards rendered pursuant to the convention.

Section 1650a gives exclusive jurisdiction over "actions and proceedings under subsection (a)" to the federal district courts, "regardless of the amount in controversy." 22 U.S.C. § 1650a(b).

### B. The Underlying Arbitration and Award

Discovery's claims arose under the Treaty between the Czech and Slovak Federal Republic and the United States of America Concerning the Reciprocal Encouragement and Protection of Investment, signed on October 22, 1991 ("Treaty"). *See* First Decl. of Stephen Anway in Support of Petition for the Recognition and Enforcement of ICSID Arbitration Award ("Anway Decl.") ¶ 7 (Doc. 1-1 at 2); Treaty (Doc. 1-5). Article VI.3(a) of the Treaty allows a qualifying United States

investor to commence arbitration under the Treaty against the Slovak Republic before an ICSID arbitration tribunal. Treaty (Doc. 1-5 at 9-10).

On September 30, 2021, Discovery filed a Request for Arbitration against the Slovak Republic with ICSID. Anway Decl. ¶ 8 (Doc. 1-1 at 2); Request for Arbitration (Doc. 1-6). Discovery relied on a third-party funder, 24LF Capital, to fund its prosecution of its claims against the Slovak Republic. Anway Decl. ¶ 9 (Doc. 1-1 at 2). During the proceedings, the Slovak Republic "learned that 24LF Capital was responsible only for financing the costs of the proceedings for Discovery, not for paying a potential costs award should Discovery lose the Arbitration." *Id.* Following briefing, the Arbitral Tribunal ordered Discovery to provide "an instrument securing a potential cost order, such as an insurance policy." *Id.* ¶ 10 (Doc. 1-1 at 2); Decision (Doc. 1-7 at 2-3). "On January 20, 2023, Discovery informed the Arbitral Tribunal that it had secured a so-called 'After the Event' (or 'ATE') insurance policy for USD 1 million in favor of the Slovak Republic." Anway Decl. ¶ 11 (Doc. 1-1 at 2).

In the arbitration, Discovery alleged that the Slovak Republic prevented it from pursuing oil and gas exploration activities through a series of measures that allegedly violated the Slovak Republic's obligations under the Treaty. Award ¶¶ 273-278 (Doc. 1-2 at 77-79). Specifically, Discovery alleged that the Slovak Republic violated the Treaty's prohibition against unlawful expropriation, unfair and inequitable treatment, arbitrary and discriminatory treatment, and failure to provide effective means. *Id.* ¶ 273 (Doc. 1-2 at 77).

On January 17, 2025, after lengthy and contested proceedings, the Tribunal issued its decision rejecting Discovery's claims in their entirety and upholding the Slovak Republic's defense that it did not breach the Treaty and was not the cause for the failure of Discovery's business ventures in the Slovak Republic. Anway Decl. ¶ 13 (Doc. 1-1 at 3); Award (Doc. 1-2).

The Tribunal found that, "confronted with a project that did not run as smoothly as it may have expected and certainly hoped, Discovery decided not to pursue its efforts mainly due to financial constraints." Award ¶ 380 (Doc. 1-2 at 110). The Tribunal further found that Discovery "resorted to self-help, circumvented an interim injunction adopted by the local courts, and generally conducted itself in a manner that, it seems to the Tribunal, needlessly antagonized the local residents." *Id.* ¶ 378 (Doc. 1-2 at 109). The Tribunal found that Slovak officials acted legally and reasonably as they "sought to accommodate and support [Discovery], on the one hand, and at the same time to consider the views expressed by the local population and environmental and climate change activists, on the other." *Id.* ¶ 380 (Doc. 1-2 at 110).

The Tribunal dismissed Discovery's claims and ordered Discovery to pay the Slovak Republic: (i) "one half of the total arbitration costs," which amounted to US $457,248.31; (ii) EUR 2,310,718.90 for the Slovak Republic's "legal fees and other costs incurred in connection with this arbitration"; and (iii) "simple interest on" these two sums "at a rate equivalent to the yield of 2-year Slovak government bonds, from the date of the Award until payment." *Id.* ¶ 713 (Doc. 1-2 at 230). "According to the National Bank of Slovakia's published calculations, the 2-year Slovak government bond yield was 2.46% on the date of the Award." Anway Decl. ¶ 19 (Doc. 1-1 at 4); *see also* Pet. at Exhibit J (Doc. 1-11).[1]

[1] On July 3, 2025, the Slovak Republic requested that the court take judicial notice of Exhibit J to its Petition, "The National Bank of Slovakia's historical, estimated zero coupon yield curve database." Pet.'s Request for Judicial Notice 1 (Doc. 3). In support, Petitioner asserted that "Exhibit J, a spreadsheet of historical economic data published by the National Bank of Slovakia and available publicly at https://nbs.sk/en/statistics/financial-markets/interestrates/estimated-yield-curve/," is properly subject to judicial notice because it is "generally known within the trial court's territorial jurisdiction" and "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *Id.* at 2 (citing Fed. R. Evid. 201(b)(1), (2)). On March 16, 2026, the court granted Petitioner's request after determining that "Exhibit J is not subject to reasonable dispute because the information contained in Exhibit J can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Order 1 (Doc. 16).

Further, because the interest rate was expressed in euros, the Slovak Republic converted the "USD 457,248.31" under the Award to Euros by using the USD/EUR official exchange rate of the European Central Bank. Using the official exchange rate at the time, total principal under the Award as of January 17, 2025, in Euros was €2,754,752.73. Anway Decl. ¶20 (Doc. 1-1 at 4) (https://www.ecb.europa.eu/stats/policy_and_exchange_rates/euro_reference_exchange_rates/html/eurofxref-graph-usd.en.html.)

Following receipt of the Award, the Slovak Republic sought payment from Discovery pursuant to the Award. Anway Decl. ¶ 14 (Doc. 1-1 at 3). After Discovery refused to pay the ordered amounts, in February 2025, the Slovak Republic contacted the insurer that issued the ATE insurance policy. *Id.* Since then, the Slovak Republic has received three payments:

- On February 22, 2025, the ATE insurance provider paid the Slovak Republic USD 999,985.00 ("Interim Payment No. 1") (Doc. 1-9);
- On June 17, 2025, Discovery's counsel, acting on its behalf, paid the Slovak Republic USD 31,398.08 ("Interim Payment No. 2") (Doc. 1-10); and
- On June 18, 2025, Discovery's counsel, acting on its behalf, paid the Slovak Republic USD 4,982.00 ("Interim Payment No. 3") (Doc. 1-10).

The "remaining amounts owed under the Award, plus interest, remain unpaid." Anway Decl. ¶ 16 (Doc. 1-1 at 3). Following conversion from Dollars to Euros, as of July 3, 2025, "Discovery owes the Slovak Republic €1,790,638.73, which includes the applicable interest under the Award." *Id.* ¶ 17 (Doc. 1-1 at 3); *see also* Doc. 1-8 (spreadsheet calculating amount remaining due from date of Award (January 17, 2025) to date of Petition (July 3, 2025) after accounting for interim payments).

**C. This Proceeding**

On July 3, 2025, the Slovak Republic commenced this action to enforce the Award. *See* Pet. On July 21, 2025, the Slovak Republic served the Petition and an accompanying summons on

Discovery by personally delivering those documents to Discovery's Chief Executive Officer and Texas-based attorney Mr. Steven Walker. *See* Return of Service (Doc. 6). The deadline for Discovery to file an answer or other responsive pleading to the Petition was August 11, 2025. *See* Fed. R. Civ. P. 12(a)(1)(A); Summons (Doc. 6 at 3). Discovery failed to serve an answer or responsive pleading and, to date, it has not entered an appearance or otherwise made any filings in this case. The Slovak Republic moved for an entry of clerk's default on August 27, 2025. *See* Mot. for Entry of Clerk's Default (Doc. 13). The clerk entered default against Discovery that same day. *See* Clerk's Entry of Default (Doc. 14).

The Slovak Republic seeks entry of a default judgment against Discovery. It requests that the court award it damages in the amount of €1,831,842.04, which includes interest calculated as at the date of its Petition; and award the Slovak Republic post-judgment interest at the statutory rate defined in 28 U.S.C. § 1961(a).

## II. Analysis

### A. Legal Standard

Federal Rule of Civil Procedure 55 governs the entry of default and default judgment. There are three stages to entry of default judgment. First, a default occurs "when a defendant has failed to plead or otherwise respond to the complaint within the time required by the Federal Rules." *N.Y. Life Ins. Co. v. Brown*, 84 F.3d 137, 141 (5th Cir. 1996); *see also* Fed. R. Civ. P. 55(a) (noting default occurs where the defendant "has failed to plead or otherwise defend" against the complaint). Second, the Clerk may enter a defendant's default if it is "established by affidavit or otherwise." *Brown*, 84 F.3d at 141 (citing Fed. R. Civ. P. 55(a)). Third, if the Clerk enters default, the plaintiff must apply for a default judgment from the court. Fed. R. Civ. P. 55(b)(2). A default judgment may not be entered against an infant or incompetent person unless such person is

represented in the action by a general guardian, conservator, or other like fiduciary who has appeared. Fed. R. Civ. P. 55(b)(2). Likewise, a default judgment may not be entered against an individual in the United States military service until an attorney is appointed to represent the defendant. 50 U.S.C. § 3931.[2]

"[A] party is not entitled to a default judgment as a matter of right, even where the defendant is technically in default." *Lewis v. Lynn*, 236 F.3d 766, 767 (5th Cir. 2001). Rather, courts retain ultimate discretion to grant or deny default judgments. *Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998). The Fifth Circuit has "adopted a policy in favor of resolving cases on their merits and against the use of default judgments," although this policy is "counterbalanced by considerations of social goals, justice and expediency, a weighing process . . . within the domain of the trial judge's discretion." *In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, 742 F.3d 576, 594 (5th Cir. 2014) (quoting *Rogers v. Hartford Life & Accident Ins. Co.*, 167 F.3d 933, 936 (5th Cir. 1999)). Default judgment remains "a drastic remedy, not favored by the Federal Rules." *Sun Bank of Ocala v. Pelican Homestead & Sav. Ass'n*, 874 F.2d 274, 276 (5th Cir. 1989).

In determining whether a default judgment should be entered against a defendant, courts have developed a three-part analysis. *J & J Sports Prods., Inc. v. Morelia Mexican Rest., Inc.*, 126 F. Supp. 3d 809, 814 (N.D. Tex. 2015) (citation omitted). First, courts consider whether the entry of default judgment is procedurally warranted. *Lindsey*, 161 F.3d at 893. Relevant factors include:

> [1] whether material issues of fact exist; [2] whether there has been substantial prejudice; [3] whether the grounds for default are clearly established; [4] whether the default was caused by a good faith mistake or excusable neglect; [5] the harshness of a default judgment; and [6] whether the court would think itself obliged to set aside the default on the defendant's motion.

*Id.*

[2] These requirements do not apply to Discovery because it is a limited liability company and, thus, cannot be a minor, an incompetent person, or a current member of the military service.

Second, courts assess the substantive merits of the plaintiff's claims and determine whether there is a sufficient basis in the pleadings for the judgment. *See Nishimatsu Constr. Co., Ltd. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975) (noting that "default is not treated as an absolute confession by the defendant of his liability and of the plaintiff's right to recover."). The pleadings are sufficient if they satisfy Federal Rule of Civil Procedure 8. *Wooten v. McDonald Transit Assocs., Inc.*, 788 F.3d 490, 498 (5th Cir. 2015); *see* Fed. R. Civ. P. 8(a)(2) (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief"). "The defendant, by his default, admits the plaintiff's well-pleaded allegations of fact, is concluded on those facts by the judgment, and is barred from contesting on appeal the facts thus established." *Nishimatsu*, 515 F.2d at 1206. The defendant, however, "is not held to admit facts that are not well-pleaded or to admit conclusions of law." *Id.*

Third, courts determine what form of relief, if any, the plaintiff should receive. *See J & J Sports Prods.*, 126 F. Supp. 3d at 814 (citation omitted). Normally, damages are not to be awarded without a hearing or a demonstration by detailed affidavits establishing the necessary facts. *See United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979). If the amount of damages can be determined with mathematical calculation by reference to the pleadings and supporting documents, a hearing is unnecessary. *James v. Frame*, 6 F.3d 307, 310 (5th Cir. 1993).

**B. Jurisdiction**

As a threshold matter, the court determines it has subject matter jurisdiction over this proceeding pursuant to 28 U.S.C. § 1331 and 22 U.S.C. § 1650(a) because it is a civil action arising under the laws and treaties of the United States to enforce an ICSID award. *See* Pet. ¶ 1. Section 1650a(a) provides that "[a]n award of an arbitral tribunal rendered pursuant to chapter IV of the [ICSID] convention shall create a right arising under a treaty of the United States," and section

1650a(b) states that "district courts . . . shall have exclusive jurisdiction over actions and proceedings under" section 1650a(a).

The court also concludes it has personal jurisdiction over Discovery because it is a Texas entity with its principal place of business in this State. *See* Pet. ¶ 2. Finally, the court determines that venue in this District is proper pursuant to 28 U.S.C. § 1391(b)(1) & (c)(2) because Discovery has its registered office and principal place of business in this District. *See* Pet. ¶ 3.

**C. Default Judgment**

***1. Default judgment is procedurally warranted.***

The Clerk entered default against Discovery. *See* Clerk's Entry of Default (Doc. 14). The court, therefore, must now determine whether default judgment is appropriate. The Slovak Republic contends that "default judgment is appropriate in the circumstances set forth in *Lindsey*, 161 F.3d at 893." Pet. (Doc. 1 at 3). The court agrees.

First, Discovery failed to file any response to the Slovak Republic's Petition. Accordingly, there are no material issues of fact. Thus, the court may take as true the pleadings demonstrating all material facts underlying the claim. *See* Pet. (Doc. 1). *Lindsey*'s first prong thus favors default judgment.

Second, nothing in the record shows substantial prejudice to Discovery should the court enter default judgment. *See Lindsey*, 161 F.3d at 893. The Slovak Republic properly served Discovery, and it has had ample opportunity to respond in this matter. *See* Return of Service (Doc. 6).

The third and fourth elements also support default judgment because the grounds of Discovery's default are clearly established, and nothing indicates this default is due to "a good faith mistake or excusable neglect." *See Lindsey*, 161 F.3d at 893. Despite being afforded multiple

opportunities to do so, Discovery failed to respond to the Petition or file any other pleadings explaining this unresponsiveness.[3] *Lindsey*'s fifth factor, therefore, also supports default judgment. *See Lindsey*, 161 F.3d at 893; *see also Joe Hand Promotions, Inc. v. Tacos Bar & Grill, LLC*, 2017 WL 373478, at *2 (N.D. Tex. 2017) ("Entering default judgment against [Defendant], who has taken no action to respond to this action, is not 'harsh.'") (quoting *Lindsey*, 161 F.3d at 893); *John Perez Graphics & Design, LLC v. Green Tree Inv. Grp., Inc.*, 2013 WL 1828671, at *3 (N.D. Tex. 2013) ("[Defendant] has had over five months to answer or otherwise respond to Plaintiff's Complaint, mitigating the harshness of a default judgment.").

Finally, nothing in the record indicates that the court would be obligated to set aside the default judgment if challenged by Discovery. *See Lindsey*, 161 F.3d at 893; *see also Moreno v. LG Elecs.*, 800 F.3d 692, 698 (5th Cir. 2015) (noting district courts are not obliged to set aside a default upon defendant's motion where "the default was willful, the plaintiff will be prejudiced, or the defendant has no meritorious defense"). Accordingly, the *Lindsey* analysis reflects that default judgment is proper here.

***2. The Petition establishes a viable claim for relief.***

Having found default judgment appropriate under *Lindsey*, the undersigned looks next to the Award, asking whether the Petition establishes a sufficient basis for default judgment. The Slovak Republic maintains that the "Petition establishes a viable claim for relief." Pet. (Doc. 1 at 4). For the reasons that follow, the court agrees.

---

[3] The record supports a finding that Discovery's default was not caused by a good faith mistake or excusable neglect. As the Slovak Republic explained in its Motion for Entry of Clerk's Default, Discovery's CEO, Mr. Steven Walker, was properly served with the Slovak Republic's Petition. *See* Pet.'s Mot. for Entry of Clerk's Default ¶ 4 (Doc. 13). Moreover, the Slovak Republic twice contacted Mr. Walker about this action, and about the deadlines to respond. *Id.* at Ex. A (Doc. 13-1). Discovery, therefore, has been aware of this action through formal service of process and through informal means of communication with the Slovak Republic.

The relevant statute provides that "[t]he pecuniary obligations imposed by [an ICSID] award shall be enforced and shall be given the same full faith and credit as if the award were a final judgment of a court of general jurisdiction of one of the several states." 22 U.S.C. § 1650a(a); *see also* Convention art. 54(1) (requiring member States "recognize an award rendered pursuant to [the] Convention as binding and enforce the pecuniary obligations imposed by that award within its territories as if it were a final judgment of a court in that State."). "This is not a demanding standard." *ConocoPhillips Petrozuata B.V. v. Bolivarian Republic of Venez.*, 628 F. Supp. 3d 1, 9 (D.D.C. 2022) (citation omitted). The court has an "extremely limited" role in reviewing an Award rendered under the ICSID Convention. *Valores Mundiales, S.L. v. Bolivarian Republic of Venez., Ministerio del Poder Popular para Relaciones Exteriores*, 87 F.4th 510, 520 (D.C. Cir. 2023) (explaining Congress's intent to "reduc[e] the scope of judicial review of ICSID awards below even the 'extremely limited' review available" to other arbitral agreements under the Federal Arbitration Act). The court's role in considering a petition for enforcement of an ICSID award is limited to "examin[ing] the judgment's authenticity and enforc[ing] the obligations imposed by the award." *Id.* at 522 (citation omitted).

Under this deferential framework, and with no argument from Discovery to the contrary, the court determines that it must enforce the Award. First, the Slovak Republic has shown that the Award is authentic by attaching to the Petition a copy of the Award accompanied by a certificate of authenticity signed and stamped by the Secretary-General of ICSID. *See* Award (Doc. 1-2). In addition, excerpts of the same Award are accessible on ICSID's online case database. *See Discovery Global LLC v. Slovak Republic* (ICSID Case No. ARB/21/51), https://icsid.worldbank.org/cases/case-database/case-detail?CaseNo=ARB/21/51.

Further, the Slovak Republic has submitted the Anway Declaration (Doc. 1-1); the Treaty (Doc. 1-5); the Request for Arbitration (Doc. 1-6); the Tribunal's Decision (Doc. 1-7); and proof of Discovery's partial payment of the Award (Docs. 1-9 and 1-10). Like the Award, these documents are each thorough, careful, and well-reasoned, and the court has no basis to disregard them. These materials are enough to establish a prima facie entitlement to relief, and the Slovak Republic has, therefore, established its entitlement to relief under 22 U.S.C. § 1650a. Consequently, "[b]ased on a straightforward application of Section 1650a," the Award is enforceable against Discovery. *Valores Mundiales*, 87 F.4th at 520. The court, therefore, will grant the Slovak Republic's Petition, enter default judgment against Discovery, and enforce the Arbitral Award.

***3. No hearing is required because the Slovak Republic's damages can be determined with mathematical calculation.***

A hearing is not necessary to establish the Slovak Republic's damages because they can be determined with mathematical calculation by reference to the pleadings and supporting documents. *See Joe Hand Promotions, Inc. v. Alima*, 2014 WL 1632158, at *3 (N.D. Tex. Apr. 22, 2014) ("Damages must be proven by a hearing or a demonstration of detailed affidavits establishing the necessary facts. If the amount of damages can be determined with mathematical calculation by reference to the pleadings and supporting documents, a hearing is unnecessary.") (citing *James*, 6 F.3d at 370).

The amounts owed to the Slovak Republic were determined in the Award. The Tribunal ordered Discovery to pay the Slovak Republic: (i) "one half of the total arbitration costs," which amounted to US $457,248.31; (ii) EUR 2,310,718.90 for the Slovak Republic's "legal fees and other costs incurred in connection with this arbitration"; and (iii) "simple interest on" these two sums "at a rate equivalent to the yield of 2-year Slovak government bonds, from the date of the

Award until payment." Award ¶ 713 (Doc. 1-2 at 230). "According to the National Bank of Slovakia's published calculations, the 2-year Slovak government bond yield was 2.46% on the date of the Award." Anway Decl. ¶ 19 (Doc. 1-1 at 4); *see also* Pet. at Exhibit J (Doc. 1-11). Regarding the interest awarded by the Tribunal in the Award, the Slovak Republic explained in Stephen Anway's Declaration how to calculate the interest rate in the Award, *see* Anway Decl. ¶¶ 17-26 (Doc. 1-1) and included documentation showing those calculations (*see* Doc. 1-8).

## III. Conclusion

For the reasons stated above, the court **grants** the Slovak Republic's Motion for Default Judgment (Doc. 15). Further, pursuant to 22 U.S.C. § 1650a, the court **recognizes** and **enforces** the Award in *Discovery Global LLC v. Slovak Republic* (ICSID Case No. ARB/21/51), dated January 17, 2025 (Doc. 1-2).

The Slovak Republic is hereby **ordered** to submit a proposed judgment by **Friday, August 28, 2026**. As the court intends to issue a final judgment on Monday, August 31, 2026, the court **directs** the Slovak Republic to include in its proposed judgment its calculations of prejudgment interest up to and including Sunday, August 30, 2026, and to convert all amounts due and owing to Euros.[4]

**It is so ordered** this 25th day of August, 2026.

Sam A. Lindsay
United States District Judge

[4] In the Petition, the Slovak Republic requests that the court enter judgment in Euros. *See* Pet. ¶ 23 (Doc. 1 at 8).